**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Metropolitan Life Insurance Company,<br><br>           Plaintiff,<br><br>v.<br><br>Florinda Lynch, *et al.*,<br><br>           Defendants. | No. CV-19-08056-PCT-JJT<br><br>**ORDER** |

At issue is Cross-Claimant Florinda Lynch's Motion for Summary Judgment (Doc. 45), to which *pro se* Cross-Defendant Royal Martin, Jr. filed a Response (Doc. 49), Lynch filed a Reply (Doc. 50), and Martin, Jr. filed a Response (Doc. 51) to Lynch's Reply.[1] No party requested oral argument on the Motion, and the Court finds it appropriate to resolve the Motion without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

In this interpleader action, Lynch and Martin, Jr. both claim they are the rightful beneficiaries to a life insurance benefit from Interpleader Plaintiff Metropolitan Life

---

[1] A Response to a Reply is ordinarily referred to as a Sur-Reply, and filing such a brief requires justification and leave of Court. *See* LRCiv 7.2. But, in his Response to Lynch's Motion for Summary Judgment, Martin, Jr. asks for judgment in his favor or in favor of Naomi Platero (Martin). (Doc. 49 at 4.) Because he proceeds *pro se* and this is an interpleader action between two competing claimants, the Court will construe Martin, Jr.'s Response as a request for judgment. Lynch had the opportunity to respond, and did so, by way of the Reply (Doc. 50), so Lynch is not prejudiced. As a result, the Court construes Martin, Jr.'s final brief (Doc. 51) as a Reply to his own Motion (Doc. 49). The Court notes that this brief did not contain new arguments that changed the Court's resolution of the issues before it.

Insurance Company ("MetLife") in the amount of $135,869.86 arising from Royal Martin, Sr.'s death. Interpleader MetLife has deposited the disputed funds with the Court. (Doc. 22.)

The evidence shows the following: Decedent was employed by the Navajo Nation and a participant in the Navajo Nation Benefit Plan issued by MetLife, which included a group life insurance policy. (Doc. 1, Compl.) The plan allowed participants to designate beneficiaries, and on June 21, 1995, Decedent designated Martin, Jr., his son, as sole beneficiary to plan benefits by way of an Employee Enrollment Form. (Doc. 1-2 at 69, Compl. Ex. D, Enrollment.) On May 4, 1999, Decedent completed an Application for Coverage Update designating Lynch as the sole beneficiary to plan benefits and identifying her as "spouse common law." (Doc. 1-2 at 66, Compl. Ex. C, Update.) Upon his death in 2017, the New Mexico death certificate indicated that Decedent remained married to Naomi Platero; they married in 1983 and later separated but, according to Martin, Jr.'s brief, they never divorced. (Doc. 1-2 at 64, Compl. Ex. B, Death Certificate.)

After Decedent's death, Lynch submitted a claim for the plan benefits and identified herself as Decedent's "former spouse." (Doc. 1-2 at 71, Compl. Ex. E, Claimant's Statement.) Upon inquiry, she informed MetLife that she and Decedent were married and had separated but, because it was a common law marriage, there was no divorce decree. Because Arizona law provides that a divorce ordinarily revokes a beneficiary designation to the former spouse, A.R.S. § 14-2804(1)(a), but neither a marriage certificate nor divorce decree exist to formalize the relationship of Decedent and Lynch, MetLife filed this interpleader action for resolution of the question whether Lynch or Martin, Jr. is entitled to the plan benefits.

## II.   LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

This dispute turns on the validity of the designation of Lynch as plan beneficiary at the time of Decedent's death. The MetLife plan specifies that it is governed by the state of residency of the participant, with some exceptions not applicable here. (Doc. 1-2 at 6, Compl. Ex. A, Plan.) Decedent lived in Arizona at the time of plan enrollment and his death, so Arizona law governs the plan. (Doc. 1-2 at 64, 69, Compl. Ex. B, Death Certificate; Ex. D, Enrollment.) Both Decedent and Lynch explicitly held themselves out to be married under common law to MetLife, and Lynch has also so claimed to this Court.

While Arizona does not give legal effect to a common law marriage entered into in Arizona, A.R.S. § 25-111, it does recognize common law marriages entered into in a state or nation where such marriages are valid, A.R.S. § 25-112(B). The Navajo Nation, in which Decedent lived, allows common law marriages. 9 N.N.C. § 3(E), and Arizona generally recognizes and gives effect to Navajo Nation law, *see Leon v. Numkena*, 689 P.2d 566, 570 (Ariz. Ct. App. 1984).

It is not clear from the record what became of Decedent's prior marriage to Platero, which ended but for which there is no divorce decree before the Court, or in New Mexico according to the Certificate of Death.[2] (Doc. 1-2 at 64.) Navajo Nation law permits contracts for marriage only between unmarried people, 9 N.N.C. § 4(A), so if Decedent was still married to Platero, he could not have also been married to Lynch. But it is clear that Decedent and Lynch held themselves out to be married under Navajo Nation law. *See* 9 N.N.C. § 3(E)(4). Decedent explicitly indicated as such on the Coverage Update. (Doc. 1-2 at 66 (referring to Lynch as "spouse common law").) And in seeking the plan benefits after Decedent's death, among other places, Lynch identified herself as Decedent's "former spouse." (Doc. 1-2 at 71.) These are evidence, uncontroverted here, that Decedent and Lynch sought the recognition and benefits of common law marriage under Navajo Nation law, which Arizona law recognizes, including in the forms associated with the MetLife plan benefits.

Under Arizona law, which explicitly governs the plan, a divorce revokes a life insurance beneficiary designation to the former spouse. A.R.S. § 14-2804(1)(a). Because Lynch averred that the common law marriage between her and Decedent ended—there is no divorce decree simply because there was no marriage certificate associated with a common law marriage to begin with—MetLife questioned the validity of the designation of Lynch as beneficiary at the time of Decedent's death. As Martin, Jr. argues, it is only

---

[2] Moreover, the question of non-party Platero's community property interest in Decedent's estate, if any, is not before the Court.

since realizing that being the "former spouse" of Decedent was detrimental to her claim for the life insurance benefits that Lynch has asserted that she was not married to Decedent.

At the time he entered into a common law marriage with Lynch and so indicated on the Coverage Update, if Decedent was not still legally married to Platero and the common law marriage was valid, then the Court must give effect to § 14-2804(1)(a) and find that the end of the marriage to Lynch revoked the beneficiary designation to Lynch. The language of that statute indicates the clear intent that life insurance benefits to the spouse end with the end of the marriage.[3] Lynch cannot now claim not to be divorced from Decedent simply to obtain the plan benefits. *See Unruh v. Industrial Comm'n*, 301 P.2d 1029, 1031 (Ariz. 1956) (concluding the ex-wife of decedent, who participated in a divorce proceeding, could not question the validity of the divorce for her own personal financial advantage on the grounds of quasi estoppel, because her assertion of rights in the decedent's estate was inconsistent with her past conduct).

If Decedent was still legally married to Platero at the time he submitted the Coverage Update, then identifying Lynch as his common law spouse was a material misrepresentation in violation of the terms of the Coverage Update itself, which require truthful information and warn that "inaccuracy or omission may result in a loss of coverage and unpaid claims." (Doc. 1-2 at 66–67.) Under any marital property regime, marital status is material with respect to the distribution of marital assets. Moreover, accepting a contention that a valid divorce of a prior marriage occurred when it did not "would validate a subsequent bigamous marriage of a participant therein." *See Cross v. Cross*, 381 P.2d 573, 575 (Ariz. 1963). In such an instance, the Court must conclude that the Coverage Update was invalid and unenforceable. *See, e.g.*, *CenTrust Mortg. Corp. v. PMI Mortg. Ins. Co.*, 800 P.2d 37, 42 (Ariz. Ct. App. 1990) (concluding material misrepresentations by

---

[3] Under Arizona law, a beneficiary designation is a type of "governing instrument," which Arizona law defines as "a deed, will, trust, insurance or annuity policy, account with pay on death designation, security registered in beneficiary form, [or] pension, profit sharing, retirement or similar benefit plan . . . ." A.R.S. § 14-1201(27). Divorce or annulment results in revocation of the disposition of property to the former spouse in a governing instrument. A.R.S. § 14-2804(1)(a).

an insured in insurance policy application acted to rescind the insurance policy under Arizona common law); *Am. Nat. Ins. Co. v. Caldwell*, 216 P.2d 413, 414 (Ariz. 1950) ("The law is well settled in this state that failure to disclose material facts with no intent to deceive, in an application for a life insurance policy where the insured knew of those facts at the time of his application, constitutes legal fraud and voids the policy.")

Because the beneficiary designation to Lynch is not enforceable in either scenario, the Court must give effect to the prior beneficiary designation at the time of Decedent's death, namely, to Decedent's son, Martin, Jr.

**IT IS THEREFORE ORDERED** denying Cross-Claimant Florinda Lynch's Motion for Summary Judgment (Doc. 45).

**IT IS FURTHER ORDERED** granting summary judgment to Cross-Defendant Royal Martin, Jr. (Doc. 49).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter Judgment in favor of Royal Martin, Jr., who appears *pro se* in this matter and is, according to the record, located at the following address:

> P.O. Box 785
>
> Crownpoint, NM 87313
>
> (505) 422-1222
>
> royalrmartin@gmail.com

Royal Martin, Jr. is entitled to $135,869.86, representing the death benefits due under a life insurance policy on the life of Royal Martin, Sr., issued by Metropolitan Life Insurance Company and deposited with the Court on August 6, 2019 (Doc. 22), plus any accrued interest.

**IT IS FURTHER ORDERED** that the finance division of the Clerk of Court shall forthwith dispense the interpleader funds identified above in the amount of $135,869.86 (Doc. 22) plus any accrued interest, to Royal Martin, Jr. pursuant to Judgment of the Court.

**IT IS FURTHER ORDERED** that Royal Martin, Jr. shall, as soon as is practicable, provide to the finance division of the Clerk of Court all documentation and information the

Clerk of Court will require to effectuate disbursement to him of the interpleaded funds together with any accrued interest.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close this matter.

Dated this 23rd day of March, 2021.

_____
Honorable John J. Tuchi
United States District Judge